IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vivian M. Woods, ) | C/A 9:11-1161-SB-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Haig Point Club Community Association, ) | |
| Inc., a/k/a Haig Point Club Community ) | |
| Association, LLC.; Randy Page, General ) | **REPORT AND RECOMMENDATION** |
| Manger HPC Inc. a/k/a Randall Page; ) | |
| Tim Richards, Operations Director ) | |
| HPCCA Inc. and/or LLC a/k/a Timothy ) | |
| Richards; Judy Wade, Former President ) | |
| HPCCA Inc. and-or LLC; Stan Waterhouse ) | |
| Former General Manager HPCCA Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff asserting a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2001(e), et seq., and a state law claim for intentional infliction of emotional distress. Plaintiff filed this action pro se, but now has counsel.

The Defendants have not answered the Complaint, instead choosing to file a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P. At the time the motion to dismiss was filed, Plaintiff was still pro se, so a Roseboro order was entered by the Court advising Plaintiff of the importance of a dipositive motion and of the need for her to file an adequate response. Subsequently, counsel made an appearance on behalf of the Plaintiff and filed a response in opposition to the Defendants' motion on September 8, 2011. Defendants filed a reply memorandum on September 19, 2011.



Defendants' motion is now before the Court for disposition.[1]

## **Plaintiff's Allegations**

Plaintiff alleges in her Complaint that she is an African American female who worked for the Defendant Haig Point Club Community Association, Inc. (hereinafter "Haig Point") as a security officer from April 2008 to February 2011. All of the named natural Defendants are alleged to be current or former employees and/or members of the Defendant Haig Point Community Association. Plaintiff alleges that on or around May 11, 2009, she had a discussion with Chief of Security Vincent Ferullo about her interest in the position of Assistant Chief of Security, which was at that time vacant. The previous assistant chief had recently been terminated. Plaintiff alleges that Ferullo told her that Haig Point was not going to fill the position, and she told Ferullo that if Haig Point ever did decide to fill the position, that she would like to be considered. Plaintiff followed up this conversation with an email.

Plaintiff alleges that around March 13, 2009, Ferullo told her that Haig Point was looking to fill a position called "Security Officer Supervisor", and Plaintiff sent Ferullo a letter of interest, which she again followed up with an email. However, the following month (April 14, 2009) Plaintiff received an offer of employment letter for a position titled "Administrative Security Officer". The letter did not include a job description for this position (the letter indicated that the job description would be created within thirty days). The following day, April 15, 2009, the Security Officer Supervisor position was given to a white forty year old male. Plaintiff alleges that three

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



African Americans (herself included) applied for the position, but that none of them received the position even though each "had more experience and were more qualified than the alleged candidate chosen." Plaintiff alleges that she informed the Defendants "on several occasions" that she believed she was being discriminated against, but that the Defendants "continued business as usual and continued in their discriminatory practices."

Plaintiff alleges that on or about July 17, 2009, the white male who had been chosen for the Security Officer Supervisor position (who Plaintiff alleges was called "Assistant Chief of Security" while he was in this position) quit and/or resigned. The Defendants decided they were not going to fill this vacant position, although on or around August 18, 2009 the Defendants decided to advertise internally for a security officer's position that clearly specified the hours and duties of the Assistant Chief of Security's hours and responsibilities.

Plaintiff alleges that in June 2010, Ferullo began making preparations to retire as Chief of Security. Plaintiff sent an email to the Defendant Randy Page, General Manager, informing him of her interest in becoming the Chief of Security. However, Plaintiff alleges that the Defendants never responded to her email, and did not even acknowledge receiving any such correspondence. Then, on January 10, 2011, the Defendants, including the Defendants Page and Tim Richards (Operations Director), called an employee meeting and informed Plaintiff and the other employees that they were eliminating the entire security department. Page allegedly said that no one was going to lose their jobs, that the company was being restructured, and that although everyone would have to reapply for the newly created positions, the security department would have first option to get these new positions. Plaintiff alleges that the Defendants informed the employees that they were employing an outside security contracting agency to provide security services, effective February 15,



2011. The employees were given five days to reapply for their jobs and/or for the newly created positions, with interviews to begin on January 19, 2011.

Plaintiff alleges that she sent cover letters and letters of interest for all available positions and that she was qualified for these positions. Plaintiff further alleges that when the new contract security officers arrived, Richards instructed her to train these new officers. Plaintiff alleges that she was then interviewed on or around January 22, 2011 by Richards, Assistant OPS Director Chris Anselmo, and Human Resource Manager Latonya Manigo, and thereafter received a call from Manigo requesting a meeting with her on February 1, 2011. Plaintiff alleges that during that meeting on February 1, 2011, she was informed by Richards that she was being terminated and that her services were no longer needed.

Plaintiff alleges that she was discriminated against on the basis of her race and gender when she was passed over for a position in favor of a less qualified white male, and that the Defendants discriminated against African Americans in their employment practices and policies, all in violation of Title VII. Plaintiff further alleges that the Defendants' conduct inflicted "severe emotional distress" upon her, entitling her to relief under state law. Plaintiff has attached several exhibits to her Complaint, including a right to sue letter from the Equal Employment Opportunity Commission (EEOC) dated February 3, 2011. See generally, Complaint with Attachments.

## Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). In their

4



motion to dismiss, Defendants argue 1) that Plaintiff's Complaint should be dismissed because she failed to file this lawsuit within ninety (90) days of having been issued a Right to Sue letter; 2) that the natural Defendants are entitled to dismissal as party Defendants under Plaintiff's Title VII claim; and 3) that Plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provision of the South Carolina Workers Compensation Act, and in any event fails for lack of factual support.

### I.

### (Time Bar Issue)

Defendants first argue that they are entitled to dismissal of Plaintiff's Title VII claims because this lawsuit was not filed within ninety days of the issuance of Plaintiff's Right to Sue Notice by the EEOC. By statute, a civil action under Title VII must be filed within ninety (90) days of the date of receipt by a claimant of a duly issued notice of right to sue from the EEOC; 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); see also Coleman v. Talbot County Detention Center, 242 Fed. Appx. 72, at ** 1 (4th Cir. July 12, 2007); Aziz v. Orbital Scis. Corp., No. 98-1281, 1998 WL 736469, at *1 (4th Cir. October 19, 1998) ["Title VII . . . allow[s] an aggrieved party ninety days after receipt of a right-to-sue letter from the EEOC to file a civil action"]; and if not filed within this time period, the lawsuit is generally deemed to be untimely and the individual is barred from pursuing their claim. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-150 (1984), reh'g denied, 467 U.S. 1231 (1984); Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir. 1987).

It is undisputed from Plaintiff's Complaint and attached exhibits that her Right to Sue letter from the EEOC was mailed on February 3, 2011. However, Plaintiff alleges in her Complaint



exhibits and affidavit that she did not receive her Right to Sue letter until February 14, 2011, and that since Plaintiff filed her Complaint on May 13, 2011 (eighty-eight days later), her Title VII claim was timely filed. While Defendants have not responded to this specific argument, the general rule is that Courts presume receipt three (3) days after mailing if the date of receipt is in dispute. <u>Ish v. Arlington County, Virginia</u>, No. 9-2433, 1990 WL 180127 (4th Cir. Nov. 21, 1990). See also <u>Baldwin County Welcome Ctr. V. Brown</u>, 466 U.S. 147, 148, n. 1 (1984)[applying 3-day rule to Title VII case where date of receipt was not pleaded]; <u>Johnson v. St. Barnabas Nursing Home</u>, 368 Fed. Appx. 246, 248 (2d Cir. 2010)["Absent sufficient evidence to the contrary, it is presumed that a Plaintiff received his or her Right to Sue letter three days after its mailing."]; Fed.R.Civ.P. 6(e). This would make Plaintiff's receipt date February 6, 2011, pursuant to which the filing of this lawsuit would be untimely.

However, when the actual date of receipt is known, that date controls. See <u>Dixon v. Digital Equip. Corp.</u>, No. 92-1483, 1992 WL 245867 at * 1 (4th Cir. Sept. 30, 1992). Plaintiff's pleadings and filings allege that she retrieved the Right to Sue letter from her post office box on February 14, 2011, and pursuant to the standards of a Rule 12 motion to dismiss, this factual allegation is sufficient to maintain Plaintiff's Title VII cause of action at this time. <u>Skeete v. IVF America, Inc.</u>, 972 F.Supp. 206, 209 (S.D.N.Y. 1997)[Court could not determine, on motion to dismiss, when in fact Plaintiff received Right to Sue letter and whether any delay in her receipt from her post office box was unreasonable.]; <u>Iqbal,</u> 129 S.Ct. at 1949 [Rule 12 motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "in its face"]; <u>see</u> <u>also</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)[A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations



must only be enough to raise a right to relief above the speculative level]; Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009)[Court may consider exhibits to a pleading in assessing its sufficiency], citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)[2]; Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698, n. 4 (8th Cir. 2003).

Therefore, the Defendants are not entitled to dismissal of Plaintiff's Title VII claim on this ground. Cf. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988).

---

[2]In addition to the attachments to her Complaint, Plaintiff has submitted, as an attachment to her memorandum in opposition to the Defendants' motion to dismiss, an affidavit attesting to her receipt date of the notice. The question of whether an affidavit is alone sufficient to meet a Plaintiff's burden of showing that they did not receive a Right to Sue letter was addressed in the case of Cohen v. School District of the River Rouge, 173 F.3d 428 (6th Cir. 1999). However, in that case, the Plaintiff alleged that she had never received the Right to Sue letter at all, and the Circuit Court remanded for more findings. In any event, at this point there is no evidence before the Court, even if the Court were to consider this matter under the Rule 56 standard for a motion for summary judgment, to dispute Plaintiff's evidence showing that she did not receive the Notice of Right to Sue until February 14, 2011. Of course, this finding does not preclude the Defendants from later filing a properly supported motion on this ground under Rule 56 if evidence obtained during discovery establishes that Plaintiff received the Right to Sue letter at an earlier time or it was unreasonable for Plaintiff not to have retrieved the letter sooner. Cf. Skeete, 972 F.Supp. at 209.

7



## II.

### (Named Natural Defendants)

Even if Plaintiff's Title VII claim is to go forward, Defendants assert that the named natural Defendants (Randy Page, Tim Richards, Judy Wade, and Stan Waterhouse) are entitled to dismissal as party Defendants because there is no individual liability under Title VII.  The undersigned agrees.

The Fourth Circuit Court of Appeals has clearly held that employees of a corporate Defendant are not liable in their individual capacities for Title VII violations.  Lissau v. Southern Food Service, Inc., 159 F.3d 177, 178-181 (4th Cir. 1988); Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) [stating that "Title VII does not provide a remedy against individual Defendants who do not qualify as 'employers.'"]; see also Jones v. Tyson Foods, Inc., 378 F.Supp.2d 705, 708 (E.D.Va. 2004); Hooker v. Wentz, 77 F.Supp.2d 753, 756 (S.D.W.Va. 1999) [supervisors not liable in their individual capacities for Title VII violations]; Dalton v. Jefferson Smurfit Corp., 979 F.Supp. 1187, 1201-1203 (S.D.Ohio 1997).  While Plaintiff argues that she can maintain a Title VII claim against these individuals because they can all be deemed employers and/or "agents" for purposes of her Title VII claim, the law is clear in this circuit that employees, supervisors, and agents of a company are not considered to be "employers" for purposes of Title VII liability.  See Bellamy v. Dowling, 07-2727, 2009 WL 2151199, at * 10 (D.S.C. Jul. 13, 2009)[Finding that there is no individual liability in cases brought pursuant to Title VII], aff'd. 2009 WL 3863432 (4th Cir. Nov. 19, 2009); Fantini v. Salem State College, 557 F.3d 22, 30-31 (1st Cir. 2009); Cintron-Alonso v. GSA Carribean Corp., 602 F.Supp.2d 319, 323-324 (D. Puerto Rico 2009)[No individual liability for agents or supervisors under Title VII]; Bailey v. Faurecia, et al., C.A. No. 09-2013, 2010 WL 5600910, at * 2 (D.S.C. Dec.



1, 2010)["Employees and supervisors are not liable in their individual capacities for violations of Title VII"], adopted, 2011 WL 165829 (D.S.C. Jan. 19, 2011).

Therefore, the named natural Defendants are entitled to dismissal as party Defendants under Plaintiff's Title VII claim.

### III.

### (Claim for Infliction of Intentional Emotional Distress)

Plaintiff also asserts a claim for intentional infliction of emotional distress, also called "outrage", against the named natural Defendants as well as (apparently) against the corporate Defendant. Under South Carolina law, in order to recover on a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the Defendants' conduct was so extreme and outrageous that it exceeded all possible bounds of decency, and that the emotional distress suffered by the Plaintiff was so severe that "no reasonable [person] could be expected to endure it." See Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 74 (S.C. 2011); Wright v. Sparrow, 381 S.E.2d 503, 505 (S.C.Ct.App. 1989); Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981); Shipman v. Glenn, 443 S.E.2d 921 (S.C.Ct.App. 1994); Gattison v. South Carolina State College, 456 S.E.2d 414 (S.C.Ct.App. 1995).

Defendants argue in their motion that this claim is barred by the exclusive remedy provision of the South Carolina Workers' Compensation Act, the relevant portion of which provides:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all of the rights and remedies of such employee, . . . . as against his employer, at common law, or otherwise, on account of such injury, loss of service or death.

9



S.C. Code Ann. § 42-1-540.

Plaintiff contends that her claim is not covered by this Act because what happened to her was not an "accident", but was instead an intentional act, and also because she suffered no physical injury. However, claims of intentional infliction of emotional distress fall within the scope of the Act except where the "tortfeasor/co-employee is the 'alter ego' of the employer....". Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993); see McClain v. Pactiv Corp., 602 S.E.2d 87, 89 (S.C.Ct. App. 2004); Loges v. Mack Trucks, Inc., 417 S.E.2d 538, 540 (S.C. 1992); Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006). None of the individual alleged Defendants meet this definition. See Dickert, 428 S.E.2d at 701 [To fall under this exception, the tortfeasor must be a "dominant" corporate owner or officer of the employer.]; McClain, 602 S.E.2d at 89; see also Dickert, 428 S.E.2d at 701 [Defining "alter ego" as "dominate corporate owners and officers", and not to include "supervisory employees"]; Washington v. Hilton Hotels Corp., No. 07-2694, 2008 WL 747792, at * 5 (D.S.C. Mar. 17, 2008).[3] This finding is the same even where, as here, the Defendants' conduct is alleged to have been wanton, willful and reckless. Washington, 2008 WL 747792, at * 7; Palmer, 2006 WL 2708278, at * 3.

  While Plaintiff is correct that a claim is not barred by the exclusivity provision of the Workers Compensation Act where the injury is not accidental, but rather results from the intentional

---

[3]Although Judy Wade is alleged to be a former President of the Defendant Homeowner's Association, this is still just a supervisory position. She is not an "owner" of the Association like the President of a company who also owns most of the stock would be. In any event, there are no factual allegations whatsoever in the Complaint concerning this Defendant. Rather, it is readily apparent from a plain reading of the Complaint that Wade has been named as a Defendant due to her having been a past president of the Association. This is not a basis for liability in an outrage claim. Cf. Moody v. Darnell, No. 09-702, 2010 WL 297810, at * 3 (D.S.C. Jan. 21, 2010)[No vicarious liability in South Carolina for tort of intentional infliction of emotional distress].



act of the employer, again that exception only applies where the allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself.  Edens v. Bellini, 597 S.E.2d 863, 869-870 (S.C.Ct.App. 2004)["An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego."].  Plaintiff's contention that her outrage claim should be allowed to continue because she suffered no injuries also is without merit, because the South Carolina Supreme Court has held that causes of action for intentional infliction of emotional distress constitute personal injuries within the scope of the act.  Palmer, 2006 WL 2708278, at * 2; McClain, 602 S.E.2d at 89.

Therefore, the Defendants are entitled to dismissal of Plaintiff's claim for intentional infliction of emotional distress under South Carolina law.

## Conclusion

Based on the foregoing, it is recommended that the named natural Defendants all be **dismissed** as party Defendants in this case.  It is further recommended that Plaintiff's cause of action for intentional infliction of emotional distress be **dismissed**.  If the Court adopts this recommendation, the only claim that will remain pending in this case is Plaintiff's Title VII claim against the named corporate Defendant.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 29, 2011
Charleston, South Carolina

11



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

